## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIEDRE HORNE,** ) | |
|     **On behalf of R.P.** ) | |
| **3126 E St. SE** ) | |
| **Washington, DC 20019,** ) | |
| ) | **Civ No.:** |
|         **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **POTOMAC PREPARATORY** ) | |
| **PUBLIC CHARTER SCHOOL** ) | |
| **A Corporation** ) | |
| **4401 8th Street NE,** ) | |
| **Washington, DC 20017** ) | |
| ) | |
|      **Defendant.** ) | |

## COMPLAINT

COMES NOW, the Plaintiff Deidre Horne, on behalf of her minor son, R.P. by and through the undersigned counsel, to respectfully state to this Court as follows:

### PRELIMINARY STATEMENT

1. This is action seeks an order reversing a hearing officer's determination ("HOD") and ordering appropriate relief for the Defendant's failure to provide a free appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA").

### JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to:

    a. The Individuals with Disabilities Educational Improvement Act, 20 U.S.C. § § 1400-1461 and,

    b. Declaratory Relief is authorized by 28 U.S.C. §§ 2201 and 2202.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

4.  Plaintiff, Diedre Horne ("Ms. Horne"), is the mother of R.P., a minor resident of the District of Columbia.

5.  Ms. Horne, at all times relevant to this action, has been a resident of the District of Columbia.

6.  Defendant is a corporation that receives federal funds as a local educational agency ("LEA") pursuant to the IDEA, *see* 20 U.S.C. § 1411, in exchange for providing a free and appropriate public education ("FAPE"), and is obliged to comply with the applicable federal regulations and statutes, including but not limited, to IDEA. *See* 20 U.S.C. § 1412(a)(1)(A).

## FACTUAL ALLEGATIONS

7.  Prior to the start of the 2013-14 school year, Ms. Horne requested that R.P. be evaluated for any disabilities that would justify the provision of special education and related services.

8.  On November 15, 2013, the Defendant completed a comprehensive psychological evaluation.

9.  That evaluation found that "[o]verall, it is likely that [R.P.]'s noted behaviors of inattention, impulsivity, and hyperactivity is [sic] a manifestation of his emotionality due to his history of exposure to domestic violence and recent family transitions.  Nonetheless, given his behavioral profile, childhood history, and deficits in understanding social conventions of behavior, [R.P.] will likely have difficulty functioning in a general classroom setting."

10. The evaluation also emphasized that "[R.P.] appeared guarded in his approach to projective measures and response to item content on the objective measures.  Thus, his behavior during the social-emotional measures may not accurately reflect his current level of social-emotional functioning, as he might have somewhat *underreported* problems." (Emphasis added.)

11. Despite these findings, the evaluator recommended that the student was ineligible to receive special education and related services under the IDEA. In determining eligibility, the evaluator only considered whether R.P. met the eligibility classifications for Learning Disability ("LD") and Other Health Impairment ("OHI"). Despite her findings regarding R.P.'s emotionality and its impact on his ability to function in the general classroom setting, the evaluator did not consider whether R.P. met the eligibility classifications for Emotional Disturbance ("ED").

12. On December 3, 2013, the Defendant completed a functional behavior analysis ("FBA"). That evaluation found that R.P. appeared to become defiant because he lacked the skills to express his frustration or anger.

13. On January 28, 2014, the Defendant determined that R.P. was not eligible to receive special education and related services under the IDEA based primarily on the psychologist's recommendation in the Defendant's psychological evaluation.

14. On March 10, 2014, a behavior intervention plan ("BIP") was developed to provide the student with positive interventions to address his behaviors.

15. Between March 11 and May 6, 2014, the student was repeatedly disciplined for behaviors related to or stemming from his inattention and hyperactivity, despite the Defendant's use of the BIP.

16. On or about March 20, 2014, the student attempted suicide by jumping out of a window. When interviewed by school personnel immediately after, he stated that he jumped out of the window because he "wanted to die."

3

17. On March 21, 2014, the District of Columbia's Child and Adolescent Mobile Psychiatric Service ("CHAMPS") evaluated R.P. and developed a Crisis Support Plan in response to his attempted to suicide.

18. On May 7, 2014, Ms. Horne sent an email to the Defendant's special education director requesting an independent education evaluation ("IEE") pursuant to 34 C.F.R. § 300.502 from the Defendant.[1]

19. On May 16, the Defendant convened a meeting to review Ms. Horne's request for an IEE. At the meeting, Ms. Horne expressed her disagreement with the Defendant's evaluation based, in part, on CHAMPS assessment of the student after his attempted suicide.

20. In a response on the same day, the Defendant's attorney replied that the Defendant "is not willing to fund an independent comprehensive psychological evaluation . . . [because] your client did not actually express disagreement with the comprehensive psychological evaluation completed by [the Defendant]. Rather, she stated that she would like a new psychological evaluation in light of the fact that [R.P.] received a mental health diagnosis by an outside provider after the comprehensive psychological evaluation was completed." The email continued, "[i]n light of what has been outlined here, please let me know if the parent would be willing to withdraw her request for an independent comprehensive psychological evaluation. If she is not willing to do so, [the Defendant] will have to explore whether it is necessary to file a due process hearing request to establish the appropriateness of its evaluation."

21. On May 20, 2014, Ms. Horne reiterated her request for an independent comprehensive psychological evaluation and rearticulated her disagreement with the Defendant's evaluation.

---

[1] Section 300.502 provides, in relevant part, that "[t]he parents of a child with a disability have the right under this

22. On May 30, the Defendant requested, through, counsel that Ms. Horne attend a meeting at the school to discuss the student's eligibility and the student's educational supports. The Defendant did not authorize the IEE at this time.

23. On or about June 13, 2014, Ms. Horne met with school officials without counsel. At that meeting, both parties agreed that the independent FBA would take place at the beginning of the school year, but Ms. Horne did not withdraw her request for an independent psychological evaluation.

24. On or about July 8, 2014, Ms. Horne again met with school officials without counsel. However, there was no discussion of the independent psychological evaluation and Ms. Horne did not withdraw her request for an independent psychological evaluation.

25. On August 1, 2014, Ms. Horne obtained new counsel and her new counsel, Carolyn Houck, Esq., immediately emailed the Defendant's counsel to reiterate Ms. Horne's request for an independent psychological evaluation. In addition, Ms. Houck asked the Defendant to reissue its authorization for an FBA because the funding letter was inadequate to obtain an independent evaluation.

26. On August 2, 2014, the Defendant's counsel asked that Ms. Horne to "hold off on any independent evaluation" until the Defendant could again meet with her.

27. After the Defendant refused to fund the IEE, Ms. Horne filed a due process complaint on August 5, 2014.

28. At no point in time did the Defendant initiate a due process hearing to defend the adequacy of its evaluation. Instead, the Defendant argued that it should be allowed to defend the adequacy of its evaluation as a defense to Ms. Horne's request for a due process hearing.

## The October 26, 2014 Hearing Officer's Determination

29. On September 18, 2014, a due process hearing was convened pursuant to Ms. Horne's August 5, 2014 request.

30. On October 26, 2014, the hearing officer issued his HOD.

31. The Hearing Officer found that "[i]n early May 2014, [Ms. Horne] requested [for the Defendant] to provide an independent educational evaluation of [R.P.] The request was confirmed and formalized in a May 20, 2014 email from the parent's Former Attorney [sic], in which the attorney wrote that [Ms. Horne] disagreed with the conclusions of the School Psychologist in her November 15, 2013 Comprehensive Psychological Evaluation and requested a letter of authorization for Mother to obtain an independent evaluation at public expense."

32. The Hearing Officer further found that "it is undisputed that [the Defendant] did not provide an IEE evaluation, after Former Attorney [sic] informed [the Defendant] in May 2014 that [Ms. Horne] disagreed with the November 15, 2013 psychological evaluation conducted by School Psychologist [sic], and that she requested an IEE psychological evaluation at PCS expense."

33. The Hearing Officer also found at the meeting held on or about June 13, 2014, "Mother [Ms. Horne] never agreed 'to change her mind' about requesting an independent psychological evaluation."

34. The Hearing Officer further found that "there was no discussion of Mother's [Ms. Horne's] request for an IEE" at the meeting held on or about July 8, 2014.

35. However, despite these findings, the Hearing Officer ruled in favor of the Defendant:

> Based upon these circumstances, notably that from his meetings with [Ms. Horne] near the end of the 2013-2014 school year, [the] Special Education Director was left

with the impression that the IEE request had been resolved, as well as the fact that [Ms. Horne] did not bring up her request for an IEE psychological evaluation in the July 2014 meeting with the [the Defendant's] new . . . principal, I find that [Ms. Horne] has not established that there was unnecessary delay in [the Defendant's] initiating the hearing to show that its evaluation of [R.P.] was appropriate.

36. The Hearing Officer then accepted the Defendant's defense that its own evaluation was appropriate.

37. The Hearing Officer subsequently denied all relief requested by Ms. Horne.

### The Parent-Funded IEE

38. Between October 26, 2014 and January 22, 2015, R.P. was disciplined multiple times for his behaviors.

39. Among these suspensions was a two-week out-of-school suspension for striking a teacher.

40. On January 16, 2015, Dr. Natasha Nelson conducted an independent comprehensive psychological evaluation at Ms. Horne's expense.

41. Unlike the Defendant's evaluation, Dr. Nelson was able to establish a rapport with R.P. and the IEE was able to provide an accurate assessment of R.P.'s social-emotional functioning.

42. In particular, Dr. Nelson was able to identify that R.P.'s aggressive and disruptive behaviors resulted from being bullied two years prior when another student would punch him in the stomach and/or back nearly every day.  As response, R.P. developed Adjustment Disorder with Mixed Disturbance of Emotions and Conduct.

43. Dr. Nelson found that R.P.'s Adjustment Disorder "impacts his academic functioning."

44. As a result, she recommended that R.P. "meets the criteria to receive special education services under the category of Emotional Disturbance . . . ."

### COUNT I
### (The Hearing Officer Erred in Finding there was no Unnecessary Delay)

45. Plaintiff reincorporates paragraphs 1-46.

46. The Hearing Officer erred in finding that Ms. Horne did "not establish that there was unnecessary delay in [the Defendant's] initiating the hearing to show that its evaluation was appropriate."

47. Section 300.502 provides, in relevant part, that "[t]he parents of a child with a disability have the right under this part to obtain an independent educational evaluation of the child." 34 C.F.R. § 300.502(a)(1). It further states that: "If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either—(i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at public expense . . . ." *Taylor,* 770 F. Supp. 2d at 107.

48. The Hearing Officer found "it is undisputed that [the Defendant] did not provide an IEE evaluation, after Former Attorney [sic] informed [the Defendant] in May 2014 that [Ms. Horne] disagreed with the November 15, 2013 psychological evaluation conducted by School Psychologist [sic], and that she requested an IEE psychological evaluation at PCS expense."

49. However, the Hearing Officer erred when he found that the Defendant did not commit unnecessary delay when it failed to initiate a due process complaint to defend the appropriateness of its evaluation.

50. In particular, the Hearing Officer committed legal error when he found that 1) the Special Education Director's "impression that the IEE request had been resolved" and 2) the Mother's failure to "bring up her request for an IEE" at the July 2014 meeting made the Defendant's three-month long delay unnecessary.

51. In reality, Ms. Horne requested an IEE on May 20, 2014 and the Defendant immediately responded with an ultimatum for her to either withdraw her complaint or the Defendant

would initiate a due process hearing. Even though Ms. Horne persisted in her requests for an IEE, the Defendant did not ever file a request for a due process hearing to defend its evaluation. Instead, the Defendant waited until Ms. Horne filed a due process complaint as a result of the Defendant's refusal to fund an IEE. The record is absent of any evidence suggesting that the Defendant would have filed a due process complaint to defend its evaluation if Ms. Horne had not filed a due process complaint first.

52. Moreover, the Hearing Officer's finding is not supported by the record. The Defendant has not and cannot provide any evidence to show that Ms. Horne ever withdrew her request for an IEE. Indeed, Ms. Horne continued to request an IEE even after the Defendant threatened to file a due process complaint to defend the evaluation's adequacy.

53. As a result, the Hearing Officer's findings are unsupported by the record and should be reversed.

## COUNT II

### (Hearing Officer Erred in Finding that the Evaluation was adequate.)

54. The child must be assessed in all areas related to the suspected disability and the evaluations must be sufficiently comprehensive to identify all of the child's special education and related service needs. 34 C.F.R. § 300.304(c).

55. This provision specifically includes disabilities related to "social and emotional status." 34 C.F.R. § 300.304(c)(4).

56. The Defendant's own admission indicates that "may not accurately reflect his current level of social-emotional functioning, as he might have somewhat underreported problems."

57. In addition, the evaluation does not evaluate whether R.P. is a student with an emotional disturbance.

58. As a result, the Defendant's evaluation failed to adequately assess R.P. in all areas of disability, specifically his social and emotional which cause R.P. to "have difficulty functioning in a general classroom setting."

59. The Defendant's failure to evaluate R.P. in the areas of emotional and social disability is aggravated by the fact that R.P. has attempted to commit suicide and has been repeatedly suspended for inappropriate and aggressive behaviors, including striking a teacher.

60. Without an adequate evaluation that accurately reflected R.P.'s current level of social emotional functioning, the IEP team was unable to make an accurate decision regarding R.P.'s eligibility for special education and related services.

61. By virtue of the IEP team's reliance on the Defendant's flawed evaluation to find R.P. ineligible, R.P. has been denied a substantive right to a FAPE by not receiving any special education or related services even though his disability impedes his ability to learn and make academic progress in the general education setting.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Reverse the Hearing Officer's Determination and declare that the Defendant denied Ms. Horne and R.P. their rights under the IDEA;

2. Order the Defendant to reimburse Ms. Horne the market rate cost of procuring an independent educational evaluation;

3. Find R.P. eligible to receive special education and related services under the IDEA;

4. Award appropriate compensatory education;

5. Declare that Ms. Horne is the prevailing party under the IDEA and is therefore entitled to recover reasonable attorneys' fees and costs;

6.  Award the Plaintiff any other relief that this Court deems just and proper.

Respectfully submitted,

_____/s/_____
Carolyn Houck, DC Bar # 459746
240135 Porters Creek Ln.
St. Michaels, MD  21663
301-951-4278
cwhouck1@gmail.com


_____/s/_____
Charles Moran, DC Bar #970871
Steve Nabors, DC Bar#1016291
Moran & Associates
1220 L Street, Suite 760
Washington, D.C. 20005
(202) 742-2000 (voice)
(202) 742-2098 (fax)
steve.nabors@camoranlaw.com

*Attorneys for Plaintiff*

11